* I am a victim of sexual abuse as described in 18 U.S.C. 2246 (2). I have previously proven this fact to the court in a prior filing for compassionate release. The court agreed that I had established extraordinary and compelling reasons for compassionate release.

* The previous denial of the compassionate release I filed was based upon three incident reports that I received following the sexual abuse while at the Clarksburg, WV halfway house, that ultimately returned me to prison to finish my sentence.

* I am approaching the one year mark of maintaining clear conduct as of July 11, 2025. I will be receiving fifty four good conduct days back to be reduced from my final outdate.

* FBOP Unit Team here at FSL Danbury, in Danbury Connectticut, has recommended that I be returned to community placement. (Please see attached documentaition) My case manager, Ms. Boben, had originally asked for a placement date this past February but my paperwork was held up in routing and the date was moved forward to April 16, 2025. These recommendations must be cleared by all departments of the prison before being submitted to the Residential Reentry Management Ofiice. This includes but is not limited to the Warden, CMC, and Unit Manager giving each office a chance to object if their is any reason why community placement should not be made.

* My paperwork cleared the prison and was sent to the Residential Reentry Manager's Office in Pittsburgh, Pennsylvania. I received a denial based on Facility Resources: Limited Bed Space: Beds Filled On Ongoing Basis per CCM.

* BOP Program Statement 7300.09, CN-3 of 08/01/2016 Community Corrections Manual, in the change notice at 2.g and in the Program Statement at 5.2.2.b states the following: When it is certain that placement cannot be made, the CCM must consider placement in another halfway house or probations electronically monitored home confinement program. See also PS7310.04 of 12/16/1998 Community Corrections Center Utilization and Transfer Procedure: The program statement stipulates at 12.d that refferal to an alternate resource is possible upon CCC rejection, which emphasizes the utilization of home confinement when halfway houses are "full".

* Numerous Courts have held that the BOP has no discretion to delay or refuse transfer of an eligible prisoner to prerelease custody, which transfer is mandatory. See, e.g., Doe v. Federal Bureau of Prisons, 2024 WL 455309, at *1-4 (S.D.N.Y.) Feb. 5, 2024) transfer was required. Ramirez v. Phillips, 2023 WL 8878993, at *4 (E.D.Cal. Dec.22, 2023) (agreeing with the interpretation that transfer to prerelease custody is mandatory, BOP has no discretion not to transfer) 24-3053-JWL U.S. District Court, District of Kansas, Woodley v. Warden, USP Leavenworth- Judge rejected the Bureau stating that no room is available at the halfway house.

* I bring these cases to light to prove to the court that despite the RRM rejection of no bed space availability, I am, by law to be placed into the community in some other way if I have a Unit Team recommendations and the time credits allowing me to be placed there. I currently hold six hundred and seventy earned Federal Time Credits. ( See attached Documentation). I also bring these cases to the court because I have been told by my case manager that the Residential Reentry Manager has said that he is not sending me back or considering it, it will be a flat out denial. My case manager has urged me to fight the decision which I am also doing at this time, but remedies as I am sure the court is well aware of take numerous months to complete, ending up in court anyway.

* I ask the Court to take into consideration the entire six and a half year period of my incarceration that I kept clear conduct, prior to being sent to the halfway house, and that I have remained with clear conduct after the incidents at the halfway house that ultimately sent me back to prison. My incident reports were an isolated event that took place during a time that I was deeply suffering from the trauma I had endured at the hands of BOP Officer Michael Hopkins, along with the SIS and SIA investigative officers, Mr. Wascher and Mr. Sceerce, that threatened me and tried to cover up the events. As well as my boss Mr. Berry, who daily expected me to deliver notes and presents to another inmate because he told me to. Along with dealing with trauma I suffered I was also cruelly taken off of my necessary mental health medication used to treat my depression and attention deficit disorder without seeing a provider or being offered something else in place of it when it was ruled nonformulary for the institution I was transferred to. I also reached out to my counselor at the halfway house, Ms. Dodd, several times asking for help, and to get an earlier appointment to see the psychiatrist so that I could be placed back onto my mental health medication before I ended up relapsing or worse, but was only met with advice to be placed on MAT instead. I take responsibilities for my actions, I made the choices that resulted in losing my halfway house placement, but I feel they could and should have been avoided if the chain of resources had worked as it was meant to. I reached out for help so many times and was ignored. Although these incidents occurred I still kept excellent work reviews with positive consistent praise that the Human Resources Coordinator and the Director made me aware of.

* It is my firm belief that I have suffered tremendously while in BOP custody. I have been sexually and mentally violated experiencing extreme trauma that has effected me in numerous ways, including my judgement at the time of my previous reentry to the community before I was able to find skills and tools to cope with and understand what happened to me. I believe the sexual abuse caused a chain reaction and subsequent ripple effect that caused me to lose the chance I worked so hard for. Had it not happened I believe I would still be in placement at the halfway house and thriving. I have talked with my therapists about this numerous times and we have came up with plans of how to handle a situation like this should something happen in the future that is unforeseen, god forbid. I am ready for come what may with a firm support system and steps to take if needed. Including should there ever be a lapse in my mental health medication.

`** I would also like the court to take into consideration my proactive involvement in the FIT/ RDAP Program. I am currently in Phase Two of the program and on track to graduate in October. I have been selected to be the point person in charge of the morning meeting committee, which carries heavy responsibilities making sure our daily program runs smoothly and everyone knows their job assignments for the day. I am often praised by staff ( Drug Treatment Specialist Ms. Benoit) for my extremely positive attitude, for holding others accountable for their behaviors that involve criminal thinking errors, for changing my own way of thinking and being open to what the program can teach me, and for giving good feedback and advice to others that are struggling. I have been putting forth my full effort in this program to better myself for the future and to better my children's futures as well. The skillset that I have been taught, along with understanding and being able to to recognize criminal thinking errors before acting on them, so that I have a chance to correct myself before doing something I will regret later on gives me a great advantage for success in life, and sets me firmly in my self-worth and pride that I have for myself and that I will continue to maintain upon reentry into the community.

* I am considered to be in remission from my mental health disorders as well as drug addictions by the doctors and Psychology Department here at FSL Danbury ( Please see attached documentation). I also requested several months ago to be removed from the MAT suboxone program. It is my belief that I am no longer in need of the medication assistance due to the period of time I spent not taking it and feeling the best I had ever felt in my life. It is firmly my belief that had my mental health medication not been taken away I would have not needed to go back on the program and I would not have tested positive for it. I spent my entire incarceration learning how to fight and cope with my addiction. I was thriving at one point. Once the abuse started it was hard to get through the days but I still remained sober and did not use. I was taken off of my medication and I still fought for six months using what I could of prior skills I had learned to remain sober. I felt that I failed and I was weak when I agreed to be placed on the MAT Program while at the halfway house. I was struggling so bad with what happened to me and the depression and inability to focus had hit me so hard and continued to get worse each day. I am trying to not place a lot of emotion in this filing, but I want the court to know that I reached out to my counselor so many times and I cried in her office and in the hallway about needing to be placed back on my medication, yet all she kept offering and recommending was the MAT Program I had worked so hard to stay off of. Once back on it, it is a struggle to get back off of. The doctors here at Danbury told me I had to do a step down program over a period of several months, dropping the dose, I am relieved and proud to say that I will be finally off of the medication completely within the next three weeks. I have put in the effort to make sure that I do not need it, my mental health is doing excellent, and I have an expanse of coping tools and strategies that work to deal with my addiction. Living a sober life is the most important thing to me. I have to be able to take care of myself to be able to care for my daughter. She is the most important person to me and I will not fail her.

* When considering my compassionate release, I would like the Court to also take into consideration my fourteen year old daughter Haley. She is in desperate need for me to be home to care for her. Her father is in active addiction, and has been his entire life. He is rarely employed and contributes nothing financially to her care. He is in no way fit to be a caregiver to her. Her paternal grandmother has been her caregiver since I came to prison in the sense that Haley lives in her house and she makes sure that she attends school. Her grandmother has stage four stomache cancer and has already lived past the estimated time given to her by her doctors. She rarely leaves her bed. My mother has financially taken care of Haley since my incarceration began and has been the emotional support to her showing her the love that she needed that has not been given by her other grandmother. My mother gets her to all of her appointments and activities. Haley has been selected for Govenor's Honors Camp two years in a row for her school. She participates in Civil Air Patrol and is a senior staff sergeant. She also has other activities. My mother is getting unable to get her to these. My mother's health is also fading due to her AFib Heart diagnosis. Her heart valve is now only working at forty percent. She is often extremely tired, cannot walk far, and is constantly running out of breath. Haley is having to depend on the kindness of friends parents more and more. She is a lonely child that has had to grow up without a mother because of the foolish decisions I made when I was heavily addicted to drugs. I believe that both of my children have suffered more than I have from my decisions and addiction. I need to be there for her. She needs her mother to be home to do the things mothers are responsible for. I greatly worry for her wellbeing.

* I would like for the Court to consider my proposed home plan to reside in Webster County with my mother Shirley Hamrick until I have worked and saved enough money to relocate myself and my daughter to a place of my own. I plan to relocate within six months if everything goes as planned and as long as my mother does not need me to stay and care for her. Mr. Warner previously brought up the remoteness of where my mother lives and being able to monitor me. My mother has spoken with my probation officer Matt Bennett and he has assured her that there will be no problem with me residing there and that he can allow my check-ins and drug testing to be done in Upsher County if need be. This is the only home that I have. I had a backup plan if my mother's was turned down, to live in a rental property my brother owns, but it is currently rented and under contract, and is also in Webster County. If I am not allowed to return home then I am condemned to homelessness. I ask the Court to take into consideration that none of my drug activity in the past occurred in Webster County. My mother's home has always and will forever remain my safe place. My mother is an upstanding Christian woman that is respected in her community. The home is located in a safe area amongst professional respected community members. It is not located near individuals that are breaking the law. Phone communication is not a problem either. I will be able to have my daughter with me without having to transfer her out of her current school until we make our final move. She attends Pickens School in Randolph County and this is a twenty minute drive to meet her bus. I have a job offer if I want to accept it working at one of several businesses owned by Kimble and Michelle Tanner of Webster Springs, WV. They are very well respected upstanding business owners in the town. They run a trucking company, a service station and garage, and one of the restaurants in the town. I will be able to readjust to society surrounded by family, being able to bond with my daughter after so many years of separation, as well as helping my mother with things she is no longer able to do. My uncles, aunts, and cousins all reside in Webster County. They are my support system. My family. If the Court cannot approve my mother's home, then I ask that you order me to be placed into another halfway house immediately if the Clarksburg halfway house is indeed full, which I am told it is not.

Case 2:17-cr-00015-JPB-JPM    Document 1137-2    Filed 07/01/25    Page 4 of 14
PageID #: 5348

* I ask the Court to consider all that I have been through during my incarceration when making it's decision. I suffered needlessly, and the chain of command that was supposed to protect me while I served my sentence failed me terribly. It acted to hide and cover up what was allowed to be done to me as well as several others at FMC Lexington Camp. My eighth amendment rights were violated. I spent my incarceration bettering myself, changing myself, growing, making amends, doing all I could to come home and build a new life without drugs, violence, abuse, or pain. I was not required to to, but I wanted to. I did not wait until the last minute to change either like many do. I walked the line and maintained clear conduct for over six straight years. That is almost impossible in some facilities, as you can receive write ups for having a button on your shirt come unbuttoned or the back of your shirt coming untucked. I was a good person and a good mother and a good daughter before drugs entered my life. I did not strive to be that person again. I worked to become better than that, stronger. I dealt with several men who tried their hardest to knock me down and take everything from me. I had to fight that much harder. I served my time with respect from the officers and staff at every institution I was placed in, outside of the law breaking officers at Lexington. I took every available class offered. I taught Adult Continuing Education classes, as well as tutoring other inmates to test for their GED. I kept a job my entire incarceration. I was responsible for all shipping and receiving orders coming in and out of Lexington Camp and the men's prison. I handled all record keeping and invoice orders for billing. I was responsible for jobs that were not supposed to be done by an inmate. They were put on me as part of my job assignment and I did them well, only to learn later that I was doing a major part of the work the business office was supposed to be in charge of. When I was sent back from the halfway house I asked to be put through yet another miserable transfer through Oklahoma so that I could enter the FIT/ RDAP program. I was designated to FDC Philadelphia where nothing is required of you, not even to work. I chose to be responsible and keep working on myself. My Unit Team here at Danbury has tried getting me back home into the community. They believe me ready. I ask the Court, please send me home. See all I have suffered and all I have overcome against the odds and grant me an early release of one year. Allow me to be with my daughter who asks every day when her mom is coming to get her. I beg the Court for mercy and to allow me to prove you are making the right decision in sending me home. Thank you for your time and attention.



## Individualized Needs Plan - Program Review    (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

SEQUENCE: 02138940
Team Date: 05-08-2025

Plan is for inmate: BACHMAN, AMANDA MAE   12258-087

| Assignment | Description | Start |
|---|---|---|
| YES F/S | CLEARED FOR FOOD SERVICE | 11-20-2023 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| DAP PART | RESIDENT DRUG TRMT PARTICIPANT | 11-18-2024 |
| ED COMP | DRUG EDUCATION COMPLETE | 03-02-2020 |
| INELIGIBLE | 18 USC 3621 RELEASE INELIGIBLE | 10-13-2022 |
| MAT PART | MED ASSIST TRMT PARTICIPANT | 08-01-2024 |
| NR COMP | NRES DRUG TMT/COMPLETE | 04-29-2022 |
| NR WAIT | NRES DRUG TMT WAITING | 08-29-2024 |

**FRP Payment Plan**

| Most Recent Payment Plan |
|---|

| FRP Assignment: | COMPLT | FINANC RESP-COMPLETED | Start: 07-11-2019 |
|---|---|---|---|
| Inmate Decision: | AGREED | $50.00 | Frequency: SINGLE |
| Payments past 6 months: | $0.00 | Obligation Balance: $0.00 | |

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

**FRP Deposits**

Trust Fund Deposits - Past 6 months:   $1,583.00      Payments commensurate ?   N/A

New Payment Plan:   ** No data **

**Current FSA Assignments**

| Assignment | Description | Start |
|---|---|---|
| AWARD | EBRR INCENTIVE AWARD | 08-21-2024 |
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 10-20-2021 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 05-08-2025 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 05-08-2025 |
| N-COGNTV N | NEED - COGNITIONS NO | 05-08-2025 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-30-2021 |
| N-EDUC N | NEED - EDUCATION NO | 05-08-2025 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 05-08-2025 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 05-08-2025 |
| N-M HLTH Y | NEED - MENTAL HEALTH YES | 05-08-2025 |
| N-MEDICL N | NEED - MEDICAL NO | 05-08-2025 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 05-08-2025 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 05-08-2025 |
| N-TRAUMA N | NEED - TRAUMA NO | 05-08-2025 |
| N-WORK N | NEED - WORK NO | 05-08-2025 |
| R-MIN | MINIMUM RISK RECIDIVISM LEVEL | 05-08-2025 |

**Progress since last review**

Inmate Bachman is currently participating in the Female Integrated Treatment and Residential Drug and Alcohol programs. She has completed Wellness & Recovery.

**Next Program Review Goals**

Continue to make progress in the FIT/RDAP programs. Request enrollment in additional recreation and/or education class.

**Long Term Goals**

Complete additional class by next review.

**RRC/HC Placement**

Recommended Placement on date 04-16-2025.
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources : Limited Bed Space: Beds Filled on an ongoing basis per CCM.

Case 2:17-cr-00015-JPB-JPM     Document 1137-2     Filed 07/01/25     Page 8 of 14
PageID #: 5352



| **Individualized Needs Plan - Program Review　(Inmate Copy)** | SEQUENCE: 02138940 |
|---|---|
| Dept. of Justice / Federal Bureau of Prisons | Team Date: 05-08-2025 |
| Plan is for inmate: BACHMAN, AMANDA MAE  12258-087 | |

- Offense : CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE.
- Prisoner : Prior convictions. No pending charges.
- Court Statement : REFER TO J&C.
- Sentencing Commission : REFER TO J&C.

Bachman was reviewed based on the five factor criteria in accordance with the Second Chance Act 2007. Unit Team is recommending a placement date of 02-26-2025 in a Residential Reentry Center (RRC).

**Comments**

Bachman arrived as an RRC failure, recidivism was raised to a LOW and she will continue to have FTC applied to RRC consideration.

FSA Time Credit Assessment
Register Number:12258-087, Last Name:BACHMAN

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only -----------------
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of
05-05-2025. These dates can change if there are changes to one or more of the following: the
individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT
OF 0 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1)THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a)CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---
Projected Release Date: 09-30-2027
Projected Release Method: GCT REL
FSA Projected Release Date: 09-30-2026
FSA Projected Release Method: FSA REL
FSA Conditional Release Date: 09-30-2026
SCA Conditional Placement Days: 365
SCA Conditional Placement Date: 09-30-2025
FSA Conditional Placement Days: 670
FSA Conditional Placement Date: 11-29-2024
Conditional Transition To Community Date: 11-30-2023

## FSA Recidivism Risk Assessment (PATTERN 01.03.00)

Register Number:12258-087, Last Name:BACHMAN

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 12258-087 | Risk Level Inmate....: R-MIN |
| Inmate Name | General Level......: R-MIN (5) |
|   Last.........: BACHMAN |   Violent Level......: R-MIN (-3) |
|   First........: AMANDA | Security Level Inmate: MINIMUM |
|   Middle.......: MAE | Security Level Facl..: LOW |
|   Suffix.......: | Responsible Facility.: DAN |
| Gender.........: FEMALE | Start Incarceration..: 12/11/2018 |

**PATTERN Worksheet Details**

Item: Programs Completed, Value: 13

General Score: -8, Violent Score: -4

Risk Item Data

| Category | Assignment | Start | Stop |
|---|---|---|---|
| DRG | ED COMP | 03/02/2020 10:10 | |
| EDC | SFF TUTOR | 05/16/2019 09:00 | 05/16/2019 09:00 |
| EDC | SFFALGEBRA | 07/02/2019 00:01 | 07/02/2019 00:01 |
| EDC | SFF POETRY | 09/16/2019 00:01 | 09/16/2019 00:01 |
| EDC | SFF USGEO | 11/25/2019 00:01 | 11/25/2019 00:01 |
| EDC | SS EARLY F | 03/30/2020 00:01 | 03/30/2020 00:01 |
| EDC | SS VOCAB F | 06/08/2020 00:01 | 06/08/2020 00:01 |
| EDC | SS SOLAR F | 06/22/2020 00:01 | 06/22/2020 00:01 |
| EDC | SS SPORT F | 07/20/2020 00:01 | 07/20/2020 00:01 |
| EDC | SS SFF WW1 | 08/17/2020 00:01 | 08/17/2020 00:01 |
| EDC | SS SFF WW2 | 08/24/2020 00:01 | 08/24/2020 00:01 |
| EDC | SSPOVERTYF | 09/21/2020 00:01 | 09/21/2020 00:01 |
| WSP | PAR NATLC | 09/27/2022 16:36 | 09/27/2022 16:36 |

-----------------------------------------------------------------------------------------------

Item: Work Programs, Value: 1

General Score: -2, Violent Score: -1

Risk Item Data

| Category | Assignment | Start | Stop |
|---|---|---|---|
| EDC | MS OFFICE2 | 09/06/2019 08:56 | 09/06/2019 08:56 |